## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

KURT FREEMAN                                    CIVIL ACTION

VERSUS

HARTFORD LIFE AND ACCIDENT                      21-342-SDD-RLB
INSURANCE COMPANY

### RULING

In this ERISA case, before the Court are the cross *Motions for Judgment on the Administrative Record* filed by Defendants, Hartford Life and Accident Insurance Company and Aetna Life Insurance Company ("Defendants" or "Hartford")[1] and Plaintiff, Kurt Freeman ("Plaintiff" or "Freeman").[2] The Court has considered the Parties' respective *Oppositions*[3] and *Replies*.[4]   For the following reasons, Defendants' motion shall be granted, and Plaintiff's motion shall be denied.

## I.    BACKGROUND FACTS

Plaintiff's claimed disability stems from an injury he sustained to his left rotator cuff on June 26, 2016, outside of work, which was subsequently surgically repaired.[5]  Plaintiff filed this lawsuit following the denial of his claim for Long Term Disability ("LTD") benefits under a group LTD benefit plan ("the Plan")[6] governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[7] The Plan was sponsored by Plaintiff's former

---

[1] Rec. Doc. 26.
[2] Rec. Doc. 27.
[3] Rec. Docs. 30, 32.
[4] Rec. Docs. 33, 34.
[5] Administrative Record ("AR"), p.  865 (Claim Notes).
[6] *Id*. at pp. 1-28.
[7] 29 U.S.C. §1001, *et seq*

employer, Praxair, Inc., and was insured by a group policy of insurance originally issued by Aetna under Policy No. GP-656164 (the "LTD Policy").[8]

Defendants administered LTD claims under the LTD Policy, including Plaintiff's. The terms of the LTD Policy expressly granted Defendants the full discretion and authority to determine eligibility for benefits and to construe and interpret the LTD Policy.[9] The Parties stipulated that the LTD Policy vests Defendants with discretionary authority to determine eligibility for benefits, to construe and interpret its terms, that ERISA governs the LTD Policy, that the Administrative Record ("AR") is complete, and that ERISA preempts any state law claims.[10]

The LTD Policy and Plan provide that, during the first 24 months after a claim is made, the test for disability is the "Own Occupation" test.[11] The "Own Occupation" test requires that the claimant must be unable perform the material duties of his "own occupation" solely because of illness or injury.[12]  To remain eligible for LTD benefits after the first 24 months, a claimant must satisfy the "Any Reasonable Occupation" test for disability.[13] The "Any Reasonable Occupation" test requires that a claimant be unable to work at "any reasonable occupation" solely because of illness or injury.[14] The Plan defines "reasonable occupation" as "any gainful activity for which [the claimant is], or may

---

[8] AR, pp. 29-46.  Hartford notes: "In November 2017, Hartford acquired Aetna's group benefits business and, in connection with that transaction, Aetna appointed Hartford as its attorney-in-fact to, among other things, administer claims under certain group plans and policies administered and/or underwritten by Aetna, including the plan and policy at issue in this litigation. References to "Hartford" herein will refer to Hartford acting on behalf of Aetna Life as its attorney-in-fact."  Rec. Doc. 26-1, p. 2, n. 2.
[9] AR, p. 44.
[10] Rec. Doc. 20.
[11] AR, p. 54.
[12] *Id.*
[13] *Id.*
[14] *Id.*

reasonably become, fitted by education, training, or experience . . . ."[15] Plaintiff received LTD benefits for the initial 2-year period governed by the "Own Occupation" definition; Hartford denied continuation of LTD benefits under the "Any Reasonable Occupation" definition.

Plaintiff seeks review of Hartford's May 25, 2021 appeal decision affirming its October 6, 2020 claim decision finding that Plaintiff, a former Safety Specialist, is ineligible for LTD benefits under the "Any Reasonable Occupation" test.[16] Defendants argue Plaintiff's lawsuit must be dismissed because Hartford's appeal decision was neither an abuse of discretion nor arbitrary and capricious. Hartford maintains it conducted a full and fair review of Plaintiff's claim before affirming its October 6, 2020 claim decision.[17]

In upholding its October 6, 2020 claim decision, Hartford noted that, although the medical documentation supported some functional deficits impacting Plaintiff's use of his left shoulder and arm, Plaintiff is right hand dominant and capable of performing sedentary work on a full-time basis with certain restrictions on the use of his left arm.[18] Hartford contends this conclusion was supported by Plaintiff's own evidence.[19]

Hartford maintains it gave Plaintiff's claim a full and fair review after evaluating the entire claim file, including, "without limitation,"[20] Plaintiff's submissions and records from his treating physicians, Dr. Kelly Boussert ("Dr. Boussert") and from Dr. Wame Waggenspack, Jr. ("Dr. Waggenspack").[21] Dr. Waggenspack practices with Dr. Boussert

---

[15] *Id.* at p. 24.
[16] *Id.* at pp. 248-250 (Claim Decision, 5/25/21); pp. 190-194 (Claim Decision, 10/6/20).
[17] *Id.*
[18] Claim Decision, 5/25/21, AR, pp. at 248-250, upholding 10/6/20 Claim Decision, AR, pp. 190-194.
[19] *See* Note and Physician's Recommended Restrictions, 3/4/21, AR, pp. 283-286.
[20] Rec. Doc. 26-1, at p. 4.
[21] AR, pp. 248-250 (Claim Decision, 5/25/21 upholding 10/6/20 Claim Decision); AR, pp. 190-194; AR, pp. 351-353 (Dr. Waggenspack's office notes, 10/28/20).

and examined Plaintiff on October 28, 2020, at Plaintiff's request, specifically to ascertain Plaintiff's work capacity.[22]

At the time of Plaintiff's appeal, Dr. Boussert opined that Plaintiff could work twenty-five (25) hours a week with restrictions on the use of his left arm.[23] Further, contrary to Plaintiff's claims, Dr. Boussert reported that Plaintiff did not suffer significant side effects from his medication, and he was not cognitively impaired or sedated by his medication.[24] Dr. Boussert noted that Plaintiff was able to drive and was driving himself to his appointments.[25] While restricting Plaintiff to part-time work, Dr. Boussert nevertheless approved Plaintiff for light capacity work rather than purely sedentary work.[26]

Hartford claims Plaintiff sought an examination by Dr. Waggenspack to support Dr. Boussert's part-time work restriction;[27] however, Dr. Waggenspack disagreed with Dr. Boussert's conclusion and, rather, agreed with the determination of an Independent Medical Examination ("IME") performed by Dr. Beau Bagley ("Dr. Bagley"), a Board Certified Specialist in Physical Medicine and Rehabilitation retained by Hartford.[28] Dr. Bagley concluded that Plaintiff was capable of full-time, sedentary duty work with restrictions on his left upper extremity.[29] Dr. Waggenspack also determined, based on his review of Plaintiff's medical records, that any pain complaints were well controlled by Plaintiff's medication.[30]

---

[22] Id.
[23] AR, pp. 283-286 (Note and Physician's Recommended Restrictions, 3/4/21).
[24] Id. at p. 283.
[25] Id.
[26] AR, pp. 356-361, 366-367 and 373-374 (Dr. Boussert's office notes); see also AR, p. 386 (10/7/20 report).
[27] Id. at pp. 351-353 (Dr. Waggenspack's office notes, 10/28/20).
[28] Id. at pp. 426-438 (Dr. Bagley's IME report, 7/10/20); pp. 351-353 (Dr. Waggenspack's office notes, 10/28/20).
[29] Id.
[30] Id. at pp. 351-353 (Dr. Waggenspack's office notes, 10/28/20).

Hartford commissioned an Employability Analysis Report ("EAR"), dated August 27, 2020, which identified at least two (2) full-time, sedentary positions in the applicable labor market for Plaintiff: Safety Manager and Department Manager.[31]

Following Plaintiff's appeal of the initial claim decision, Hartford obtained a Physician's Review from William Barreto, M.D. ("Dr. Barreto") and from Dr. Jamie L. Lewis ("Dr. Lewis"), both Board Certified in Pain Medicine and Physical Medicine & Rehabilitation.[32] Notably, Plaintiff's treating physician, Dr. Boussert, is also Board Certified in the same field.

Dr. Barreto found Plaintiff capable of full-time, sedentary work with the restrictions noted.[33] Dr. Lewis found Plaintiff capable of performing at a sedentary demand level "at least," with restricted use of his left arm and unrestricted use of his right arm.[34] Based on the above medical opinions, with were in agreement with Dr. Bagley's opinion, Hartford concluded that there was substantial evidence to support its decision that Plaintiff was capable performing full-time, sedentary work with restrictions on the use of his left arm. Hartford also considered the finding by the Social Security Administration ("SAA") that Plaintiff was "not disabled" and that he was capable of performing light duty work on a full-time basis.[35]

For the above reasons, Hartford maintains it is entitled to judgment on the administrative record because there is substantial evidence supporting its claim decision.

Plaintiff also moves for judgment on the administrative record, arguing that

---

[31] *Id.* at pp. 391-406 (EAR, 8/27/20).
[32] *Id.* at pp. 305-310 (Dr. Barreto's Report, 2/9/21); pp. 260-268 (Dr. Lewis' Report, 3/31/2021).
[33] *Id.* at pp. 305-310 (Dr. Barreto's Report, 2/9/21).
[34] *Id.* at pp. 260-268 (Dr. Lewis' Report, 3/31/2021).
[35] *Id.* at pp. 836-848 (SSA determination). All Parties acknowledge that the SSA has since determined that Plaintiff is permanently disabled; however, this determination was made after the close of the Administrative Record in this case and after Plaintiff filed this lawsuit. *See* Rec. Docs. 30 & 33.

Hartford disregarded key evidence and relied on flawed evidence in reaching its decision.

Plaintiff contends that Dr. Bagley's notes from his July 10, 2020 IME demonstrate that

Plaintiff's physical capacity is "less than sedentary."[36]   Plaintiff relies on the following

notes from Dr. Bagley in support of this interpretation:

> He could not push, pull, or carry with the left arm… He guards the left upper
> extremity; therefore, it would be difficult for claimant to lift/carry/push/pull
> with the left upper extremity, but because of claimant's motor exam, he
> could lift/carry/push/pull 2 lbs. with the left upper extremity rarely…With the
> left upper extremity, he can never reach above the shoulder. With the left
> upper extremity he can reach at desk/bench level rarely. He can handle
> finger and feel with the left upper extremity occasionally….Because of the
> limitations of ROM of the left upper extremity, claimant cannot perform
> climbing and crawling….There were no inconsistencies on today's
> exam….Because there are chronic changes noted on EMG/NCV testing
> and it has been greater than two years since the original injury, claimant's
> prognosis for improvement in function of the left upper extremity at the
> shoulder without further intervention is poor…given the above restrictions…
> and a position that would let claimant be on current pain medication
> regimen, claimant can work 8 hours per day, 5 days per week.[37]

Plaintiff concedes that, on July 12, 2020, Dr. Boussert, his treating physician, evaluated

Plaintiff and concluded that he could work on a part-time basis, at light capacity with

restrictions.[38]

Plaintiff maintains that Hartford's initial denial and appeal denial were faulty in

several ways.  Plaintiff claims that Hartford erroneously credited the SSA determination

of May 8, 2019, which concluded that Plaintiff was at a greater physical capacity than

even Dr. Bagley determined.[39] Plaintiff argues that Hartford disregarded "objective

evidence" of his nerve conduction studies showing permanent nerve damage, including

---

[36] Rec. Doc. 28-3, p. 7.
[37] AR, pp. 178-190, 426-438.  Plaintiff has used ellipses to capture more than twenty (20) pages of Bagley's report in crafting this paragraph at Rec. Doc. 28-3, p. 7.
[38] Rec. Doc. 28-3, p. 7 (citing AR, pp. 340-342, 359-361).
[39] *Id.* at pp. 9-10 (citing AR, pp. 207-211).

the "chronic changes noted n EMG/NCV" identified by Dr. Bagley.[40]  Plaintiff contends

Hartford limited the scope of Dr. Bagley's findings as to Plaintiff's necessary restrictions.[41]

Plaintiff attacks the vocational analysis performed for a variety of reasons, primarily

because the two available jobs identified do not take into account Plaintiff's pain

regimen.[42]  In sum, Plaintiff contends Hartford's denial was arbitrary and capricious in the

following ways: (1) the Plan's vocational analysis was flawed and does not support the

decision; (2) Hartford arbitrarily ignored Plaintiff's disabling pain; (3) Hartford arbitrarily

ignored Plaintiff's treating physician's opinion; and (4) Hartford arbitrarily ignored third-

party observations.

## II.    LAW & ANALYSIS

### A.  Summary Judgment Standard[43]

A court should grant a motion for summary judgment when the movant shows "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."[44] The party moving for summary judgment is initially responsible for

identifying portions of pleadings and discovery that show the lack of a genuine issue of

material fact.[45]  A court must deny the motion for summary judgment if the movant fails

to meet this burden.[46]

If the movant makes this showing, however, the burden then shifts to the non-

---

[40] *Id.* at p. 10.
[41] *Id.* at pp. 10-11.
[42] *Id.*
[43] While both Parties style their Motions as *Motions for Judgment on the Record*, Defendants claim they are entitled to judgment under FRCP 56, applying the summary judgment standard.  Plaintiff maintains Rule 56 is not the applicable standard for judgment on the administrative record. The Court provides both standards and notes that it would reach the same result under either standard.
[44] Fed. R. Civ. P. 56.
[45] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[46] *Id.*

moving party to "set forth specific facts showing that there is a genuine issue for trial."[47] This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim.[48] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[49]

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[50] The court is also required to view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.[51]  Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party.[52]

### B.  ERISA Standard of Review for Judgment on Administrative Record

The Supreme Court directs courts to conduct *de novo* standard of review when adjudicating ERISA benefit disputes unless the plan documents give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[53] In this case, the Parties stipulated that the LTD Policy vests Defendants with discretionary authority to determine eligibility for benefits and to construe and interpret its terms.[54] Where the plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan, courts must base their review of both the legal and factual findings of the administrator's decision under an abuse of

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted).
[48] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990)(quotation marks omitted).
[49] *Anderson*, 477 U.S. at 250 (citations omitted).
[50] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[51] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).
[52] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[53] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).
[54] Rec. Doc. 20.

discretion standard.[55] "In the context of ERISA, the abuse of discretion standard of review 'is the functional equivalent of arbitrary and capricious review.'"[56] Here, Hartford had discretionary authority to interpret the terms of the policy and to make benefit eligibility determinations. Thus, the Court must determine whether the denial of benefits was arbitrary and capricious. Review of this question is limited to the record that was before Hartford at the time of the final claim decisions.[57] If Hartford's decision "is supported by substantial evidence and is not arbitrary or capricious, it must prevail."[58] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[59] Hartford's decision is only deemed arbitrary "'if made without a rational connection between the known facts and the decision or between the found facts and the evidence.'"[60] Under the abuse of discretion standard, a court's "'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness — even if on the low end.'"[61]

### C. Conflict of Interest

In *Metropolitan Life Insurance, Co. v. Glenn*, the Supreme Court held that a reviewing court must first consider conflicts of interest as a factor in its review of a plan

---

[55] *See Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).

[56] *Tesch v. Prudential Ins. Co. of America*, 829 F.Supp.2d 483, 493 (W.D. La. 2011)(quoting *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 512 (5th Cir. 2010)).

[57] *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999)(*abrogated on other grounds*).

[58] *Schexnayder v. Harford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).

[59] *Rittinger v. Healthy Alliance Life Insurance Company*, 914 F.3d 952, 957 (5th Cir. 2019)(citations omitted)(internal quotation marks omitted).

[60] *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)

[61] *Corry v. Liberty Life Assurance Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007).

administrator's decision.[62] In *Glenn*, the Court addressed the issue of "whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations," and if so, how that conflict should be taken into account on judicial review.[63] The Supreme Court held that a conflict of interest does exist where "the entity that administers the plan ... both determines whether an employee is eligible for benefits and pays benefits out of its own pocket."[64]  Further, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits."[65] The Fifth Circuit has applied a "sliding scale standard" where an administrator is self-interested; thus, the administrator's decision is given less than full deference.[66] "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."[67] In cases where an administrator's dual role establishes a potential conflict of interest, but the plaintiff presents no further evidence as to the degree that a conflict may exist, the Fifth Circuit has held that the administrator's decision should be reviewed "'with only a modicum less deference than we otherwise would.'"[68]

The Court assumes that Hartford is self-interested in this matter because it acquired Aetna's group benefits business.[69]  Hartford cites *Wittmann v. Unum Life Ins. Co. of Am.*, wherein the district court for Eastern District of Louisiana held, and the Fifth Circuit affirmed, that when a plaintiff fails to present evidence showing that an inherent

---

[62] 554 U.S. 105, 112, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).
[63] *Id*. at 110.
[64] *Id.* at 108.
[65] *Id.*
[66] *Vega*, 188 F.3d at 295-97.
[67] *Id*. at 297.
[68] *See Corry*, 499 F.3d at 398 (quoting *Vega*, 188 F.3d at 301).
[69] *See* fn 8, *supra*.

conflict of interest actually influenced the benefits decision, this factor is given little or no weight.[70] As Hartford contends, aside from this dual role, Plaintiff presents no further evidence on the degree of the conflict or how that conflict affected Hartford's decision. Plaintiff ostensibly attributes the allegedly flawed bases for the claim denial as being "plan advocacy" rather than "fair and impartial fiduciary analysis."[71]  In concluding his motion, Plaintiff argues that "[t]he Plan has taken a purely adversarial position against its insured. This record shows the Plan's financially conflicted, self-interested behavior to an unconscionable degree" based on efforts to reach a purported "predetermined, unsupported goal of denial."[72]  However, Plaintiff offers only conclusory arguments and offers no actual evidence that the conflict played any role in the claim denial.  As will be discussed below, Plaintiff's attacks on the claim denial are without merit; thus, Plaintiff has failed to demonstrate that an inherent conflict of interest influenced the ultimate benefits decision.

### D.    The Opinions of Plaintiff's Treating Physicians

Plaintiff maintains Hartford disregarded his treating physicians' opinions, giving credit only to the opinions of other physicians less familiar with Plaintiff's condition. Hartford counters that it clearly considered the opinion of Plaintiff's treating physicians and, further, those opinions also supported its denial of Plaintiff's claim.

As noted by another section of this Court in *Chisholm v. Guardian Life Insurance Company of America*, "[t]he Supreme Court and the Fifth Circuit have rejected any proposition that a plan administrator must attach significant weight to a party's treating

---

[70] No. 17-9501, 2019 WL 763509, at *11 (E.D. La. Feb. 21, 2019), *aff'd*, 793 Fed.Appx. 281 (5th Cir. 2019).
[71] Rec. Doc. 28-3, p. 16.
[72] *Id.* at p. 21.

physicians.[73]  Nonetheless, the Supreme Court has also held that plan administrators cannot 'arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'"[74]

After careful review of the administrative record, the Court finds Plaintiff's claim without merit.  The record demonstrates that Plaintiff's own physicians, Drs. Boussert and Waggenspack, support Hartford's claim determination.   Dr. Boussert concluded that Plaintiff is capable of performing sedentary work and that his pain is well-controlled by medication that does not cognitively impair his ability to work.   While Dr. Boussert restricted Plaintiff to less than 25 hours of work per week, she approved Plaintiff for light duty work with restrictions on the use of his left shoulder.[75]  Dr. Waggenspack determined that Plaintiff was capable of full-time sedentary work with left upper extremity restrictions, in agreement with Dr. Bagley's conclusions.[76]   The administrative record includes Dr. Boussert's findings.  Her October 7, 2020 and March 2, 2021 notes provide, respectively:

> I have treated Mr. Freeman for many years for his chronic left shoulder pain.
> As previously stated, I believe he is capable of working at least part time in
> a light capacity position which does not require use of his left arm. I have
> reviewed his recent IME and agree with the findings. He has reported that
> his pain is kept tolerable with his current medication regimen although he
> does endorse some sedation with it.[77]
>
> .  .  .
>
> I believe Mr. Freeman can work 25 hours/week with restrictions noted and
> use of right arm only (avoid use of left arm). I have discussed this with Mr.
> Freeman and he told me he could work 25 hours a week but not full time

---

[73] 449 F.Supp.3d 619, 632 (M.D. La. 2020)(citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *e.g.*, *Becknell v. Long Term Disability Plan for Johnson & Johnson and Affiliated Companies*, 510 F.App'x 317, 320 (5th Cir. 2013)).

[74] *Id.* (quoting *Black & Decker Disability Plan*, at 834, 123 S.Ct. 1965).

[75] AR, pp. 356-361, 366-367, 373-374 (Dr. Boussert's office notes); pp. 283-286 (Note and Physician's Recommended Restrictions, 3/4/21); p. 386 (10/7/20 report).

[76] *Id.* at pp. 426-43*8* (Dr. Bagley's IME report, 7/10/20) pp. 351-353 (Dr. Waggenspack's office notes, 10/28/20).

[77] *Id.* at p. 386 (October 7, 2020 Report).

because of worsened pain after about 4-5 hours and would like to avoid needing to increase medication.[78]

The opinions of Drs. Boussert and Waggenspack, Plaintiff's treating physicians, were not ignored. Indeed, they are mostly consistent with Dr. Bagley's IME and the opinions of Hartford's physicians, Drs. Barreto and Lewis, who both found Plaintiff capable of full-time sedentary work with left arm restrictions.[79] Admittedly, Dr. Boussert does not agree that Plaintiff can work full-time; however, she explained that her conclusions are based on light duty work and what Plaintiff advised her he was capable of working.[80] Under ERISA, it is not an abuse of discretion or arbitrary and capricious for Hartford to reach a conclusion supported by most of the physicians who examined Plaintiff – that he could work full-time in a sedentary position. The only material conflict in the medical reports is whether Plaintiff can work full-time or part-time. All physicians agree that Plaintiff can work with restrictions.

Plaintiff attacks Hartford's reliance on Dr. Waggenspack's recommendation, highlighting the language from his notes that his opinion was based on his alleged failure to consider further nerve injuries of which Dr. Waggenspack was unaware; however, Dr. Waggenspack cited and acknowledged Plaintiff's known history of axillary and suprascapular nerve injuries.[81] Dr. Waggenspack noted that he reviewed Dr. Bagley's IME, which contains the results of Plaintiff's only EMG/NCV study from 2016 along with Plaintiff's detailed medical history.[82] In his appeal, Plaintiff identified no other study

---

[78] *Id.* at p. 286 (Physician's Recommended Restrictions).
[79] *Id.* at pp. 305-310 (Dr. Barreto's Report, 2/9/21); pp. 260-268 (Dr. Lewis' Report, 3/31/2021).
[80] *Id.* at pp. 376-377 (Dr. Boussert's Office Notes, 9/16/2020).
[81] *Id.* at pp. 350-351, 353 (Dr. Waggenspack's Office Visit Notes, 10/28/20).
[82] *Id.* at pp. 426, 429 (IME, 7/10/2020).

regarding "further nerve injuries."[83]  Plaintiff's argument that Dr. Waggenspack failed to consider "further nerve injuries" in reaching his determination of Plaintiff's work capacity is contradicted by the record.

### E.    Plaintiff's Subjective Complaints of Pain/Third Party Witnesses

Plaintiff also contends Hartford's claim denial is flawed because it failed to consider his subjective complaints of pain and his pain medication protocol, and it failed to consider the statements from Plaintiff's family members regarding his daily living.  Plaintiff argues that his pain complaints are consistently documented by his physicians, and there was no basis to disregard Plaintiff's pain or find that his subjective complaints lack credibility. Citing Second Circuit jurisprudence, Plaintiff contends: "A plan administrator does not necessarily abuse its discretion if it requires objective support in addition to subjective reports of pain, however.[84] But a determination that pain complaints lack credibility must have some evidentiary basis in the record."[85]

Plaintiff refers to the "Statement" or "Affidavit" submitted in connection with his appeal, which he claims was corroborated by his family members.  Plaintiff's unsworn "Statement," dated February 11, 2021, contains the following statements "solemnly affirm[ed]" by Plaintiff:

1. The following has been true continuously since my last day of work related to my disability claim through the date of this statement.

2. If I try to exceed the activities described below, I have headaches, forget what I am doing, become lost, and experience emotional upset.

3. I take the following prescription medications, at the following dosages and intervals each day:

[83] *Id.* at pp. 277-297 (Appeal, 3/9/21); pp. 299-300 (Letter/Notice of Appeal, 11/19/20).
[84] Rec. Doc. 28-3, p. 18 (citing *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir. 2009)).
[85] *Id.* (citing *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir. 2003)).

Norco #10 * 1/4 tablet 4 times a day
Tizanidine* 1 dose daily
Celexa* - 1 dose daily
Ibuprofen* - 800mg As needed

4. I have limited to no use of my left extremity. I cannot reach with my left arm as it causes severe neck pain. When I use my right arm it causes my left arm to hurt. I find any regime difficult

5. Whether or not taking the above medications, I am unable to sit, walk or stand, even if alternating among these positions at will, for an extended period of time, without requiring rest with a heating pad or ice at least six times a day to relieve unbearable pain.

6. I require assistance with getting dressed, showering, preparing meals, housework and reminders to take my medication.

7. With or without taking the above-referenced medications, my disability is severe, just more severe without taking them. Whether or not taking my medication, the physical and mental effects of my medical condition as described above do not change.

8. The above-referenced medications marked with an *, when taken, while helping somewhat with pain, cause me to be unable to perform adequately mentally. They cause my thinking to be clouded and slow, leading to errors and inability to keep pace as required to accomplish any work timely, as my ability to do everything is much slower, including all activities of daily living, including but not limited to walking. I also experience dizziness, nausea, impotence, anxiety and depression as well.

9. The pain I experience causes sleepless nights every night and dramatic fatigue during the day, with or without the above-referenced medications, causing me to need several naps every day.

10. The above statements are all true and based upon personal knowledge.

11. This statement is based exclusively on my own knowledge and words, but it was completed over the course of several weeks, a little at a time, and required many hours of total time, as well as my wife's assistance with proof-reading, grammar and spelling to complete it.[86]

---

[86] AR, pp. 278; 289.

Plaintiff also relies on the "Note," allegedly created by Dr. Boussert, which Hartford contends was prepared by Plaintiff to mimic Dr. Boussert's office notes.  However, Dr. Boussert interlineated and revised the pre-prepared "Note," as shown below:[87]

---

[87] *Id.* at p. 283.

**NOTE**

RE:   **Patient: Kurt Freeman**
      **Date of Birth:** ▮▮▮▮▮▮▮▮

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen. His diagnosis is a torn rotator cuff in his left arm with resulting nerve damage. In addition to the notes and observations in the patient's medical chart, I offer the following:

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, pain components, limitations due to pain, and the effects of his pain and condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. *He can, however, work 20-25 hours a week.* ~~full time~~

He has difficulty getting comfortable and prescribed medication provides only some pain relief. He has severe pain in his left arm.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to his pain and the medications he needs to be taking as well, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he ~~cannot reasonably be expected to accurately and adequately perform mental tasks.~~ *He has denied significant side effects to his medication in the past and has been on this medication for many years.*

Other effects of his medical condition and medication include disturbed sleeping patterns due to chronic pain and fatigue. ~~Driving to and from work while taking his medications is not recommended because of the danger of sedation properties of the medicine causing delayed reactions.~~ *Disagree — he is years without difficulty. Un appearing able to drive without sedation from his medications. He has been on stable for years and drives to his appointments.* ~~His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.~~ *Cognitively impaired in any way in clinic.*

It is my opinion that he is ~~permanently disabled from any type of gainful employment.~~ *Unable to work full-time but can work reduced hours 20-25/wk w̄ restrictions.*

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

_(signature)_                                    3/4/21
PHYSICIAN SIGNATURE                    DATE

Kelly Bovssert
PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: _Kurt Truman_ S.S.=: _____

Physician's Name: _Kelly Broussard_

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a work setting where he/she would be required to work day after day, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

I.   In an 8 hour work day, the patient can walk:

Less than __1__2__3__4__(5)__6__7__8 hours

What medical conditions limit the patient's ability to walk? _Patient reports that any prolonged activity exacerbates his left shoulder and left arm pain: that he requires frequent rest to allow pain medication to keep his pain level tolerable._

II.  In an 8 hour work day, the patient can stand:

Less than __1__2__3__4__(5)__6__7__8 hours

What medical conditions limit the patient's ability to stand? _____

III. In an 8 hour work day, the patient can sit:

Less than __1__2__3__4__(5)__6__7__8 hours

What medical conditions limit the patient's ability to sit? _____

IV.   In an 8 hour work day, the patient can lift/carry:   *With ℗ hand only*

Occasionally a maximum of:

✓ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

Frequently a maximum of:

_____ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry? *lifting > 10 lbs with Right arm causes numbness of his left upper area trapezius and arm pain*

V.   Can the patient use hands for repetitive: ℗ hand only

Simple grasping and handling?          ✓ Yes      _____ No

Pushing and pulling?                   ✓ Yes      _____ No

Fine manipulation and fingering?       ✓ Yes      _____ No

What medical conditions limit the patient's ability to use hands? *No, Vision left hands recommend one of (L) shoulder injury and nerve damage Left upper extremity.*

VI.   Can the patient use feet for repetitive movements as in operating foot controls?
✓ Yes _____ No

What medical conditions limit the patient's ability to use feet? *none*

VII.   The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | ✓ | | |
| Kneel | | ✓ | |
| Squat | | ✓ | |
| Crawl | | | ✓ |
| Climb stairs | ✓ | | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | Never *R arm only* |

What medical conditions limit the patient's ability to engage in these activities?

*[handwritten] Chronic nerve damage and left shoulder pain regarding*

Additional Comments: *[handwritten] I believe Mr. Freeman can work 25 hours/week with restrictions noted and use of right arm only (avoid use of left arm). I have discussed this with Mr. Freeman and he told me he could work 25 hours a week but not full time because of worsening pain after about 4-5 hours and would [like to avoid needing to increase medication.]*

_____                    _____
Signature                                              *[handwritten] 2/4/21*
                                                             Date

In response, Hartford maintains that: (1) Plaintiff's "Affidavit" is not sworn testimony;[88] (2) substantial evidence in the record – including reports by his own physicians – contradicts several of Plaintiff's claims in his "Affidavit"; and (3) the record is rife with references to Plaintiff's pain and pain management protocol, thus demonstrating that Hartford did, in fact, consider Plaintiff's pain – as reported to physicians – in reaching its decision.

---

[88] Hartford is correct that Plaintiff's "Statement" or "Affidavit" is not a statement sworn to, under oath, as Plaintiff avers.  However, the Court will consider the statements in Plaintiff's "Affidavit" and the fact that the administrative record contradicts several of Plaintiff's statements.

Hartford further counters that it properly considered Plaintiff's complaints of pain/pain management treatment because the physicians who evaluated and treated Plaintiff addressed these issues in reaching their medical conclusions about Plaintiff's work capacity. Hartford additionally argues that, while it did consider Plaintiff's subjective pain complaints, ERISA does not require the Plan to give any heightened weight to such complaints over the medical evidence in the record.

As for the pre-prepared "Note" by Dr. Boussert, Hartford correctly explained Dr. Boussert's revisions:

> Plaintiff's administrative appeal included a "Note" and a Recommended Restrictions report from Dr. Boussert dated March 4, 2021. The "Note" was pre-prepared for Dr. Boussert's signature to accompany Plaintiff's February 11, 2021 appeal statement; however, the "Note" was significantly and substantially revised by Dr. Boussert before signing. *Id.*
>
> The initial paragraphs of the "Note" contain unsupported, conclusory statements and refer to Plaintiff's "Affidavit," even though Plaintiff's appeal statement is not sworn and not otherwise in affidavit form. In the fourth paragraph of the "Note," Dr. Boussert revised the pre-prepared segment reading that Plaintiff is disabled from "working in any occupation, even sedentary'' to read "working *full time* in any occupation, even sedentary. [He can, however, work 20-25 hours a week.]" *Id.*
>
> In the seventh paragraph, Dr. Boussert struck out completely the pre-prepared statement reading that Plaintiff "cannot reasonably be expected to accurately and adequately perform mental tasks." *Id.* In its place, Dr. Boussert wrote: "He has denied significant side effects to his medication in the past and has been on this medication for many years without ever appearing cognitively impaired in any way in the clinic." *Id.*
>
> In the eight[h] paragraph, Dr. Boussert struck out completely the pre-prepared portion reading that: "Driving to and from work while taking his medications is not recommended because of the danger of sedation properties of the medicine causing delayed reactions." *Id.* In its place, Dr. Boussert wrote: "Disagree, he is able to drive without sedation from his

medications. He has been on these for years and drives to his appointments." *Id.*

In the tenth paragraph, Dr. Boussert struck out completely the pre-prepared statement which read that Plaintiff is "permanently disabled from any type of gainful employment." *Id.* In its place, Dr. Boussert wrote that Plaintiff is "unable to work full time but can work reduced hours 20-25/wk (with) restrictions." *Id.*

Even though Dr. Boussert did not revise or strike out every word or phrase in the pre-prepared "Note," the remaining portions of the "Note" are simply not credible because they were clearly written to prop up Plaintiff's appeal by someone other than Dr. Boussert. The inflated nature of the "Note" also belies and discredits the unsworn appeal statement of Plaintiff which it was explicitly intended to support. In an effort to rectify the pre-prepared statements in the "Note," Dr. Boussert was bootstrapped into the assertion that Plaintiff could not work full time, even on a sedentary basis. However, Dr. Boussert has frequently approved Plaintiff for light duty work up to twenty-five (25) hours per week. Outside of this pre-prepared "Note," Dr. Boussert has not opined that Plaintiff could not work full time on a sedentary basis. It also cannot be ignored that Dr. Boussert, on June 15, 2018, signed off on an assessment agreeing that there was a lack of sufficient medical evidence of an impairment from full time work. See AR 497-499.[89]

In Plaintiff's *Opposition* to Defendants' motion,[90] Plaintiff simply ignores Hartford's contentions regarding this Note. Plaintiff does not deny or challenge that he prepared the "Note" for Dr. Boussert nor that she substantially altered the "Note" – and repudiated several of Plaintiff's statements – to comport with her medical opinions regarding Plaintiff's work capacity. Further, Plaintiff offers no disagreement with Hartford's explanation of Dr. Boussert's "Note" revisions, ostensibly conceding the point on this issue.

---

[89] Rec. Doc. 26-1, pp. 16-17 (original emphasis)(footnotes omitted).
[90] Rec. Doc. 30.

Considering the entirety of the administrative record, the Court finds that Plaintiff's claim that Hartford ignored his subjective pain and pain management is meritless. The record contains numerous references to Plaintiff's reports of pain and the progression of his pain medication protocol from the date of the injury through the appeal process, as detailed above. Regarding Plaintiff's credibility, Plaintiff misplaces blame onto Hartford when it is Plaintiff's own physicians who contradict the statements in his "Affidavit." As discussed above, Dr. Boussert did not credit Plaintiff's subjective beliefs about his level of incapacitation or his pain's effect on his capacity to work. Hartford was not arbitrary and capricious to assign greater credibility to the opinions of the treating and consulting physicians in this case than Plaintiff's self-serving and unsupported subjective beliefs about his condition.

Further, the administrative record contains numerous references to Plaintiff's pain and pain management by all consulting physicians. Plaintiff's suggestion that Dr. Waggenspack failed to take into account Plaintiff's pain is squarely contradicted by Dr. Waggenspack's notes, wherein he acknowledged Plaintiff's complaints of pain, but upon review of Dr. Boussert's notes, concluded that Plaintiff's pain was "relatively well controlled on his current pain medication regimen."[91] Dr. Boussert's office notes prior to the initial claim denial demonstrate that Plaintiff's complaints of pain were made tolerable by his medication, which increased his function level.[92] Even after the initial claim denial, Dr. Boussert noted that Plaintiff's pain is controlled with medication.[93] Dr. Alpesh Patel,

---

[91] AR, p. 353 (Dr. Waggenspack's Office Visit Notes, 10/28/20).
[92] Id. at pp. 340-358 (Dr. Boussert's Office Visit Notes, e.g. 1/15/2020, 3/11/2020, 5/6/2020, 7/21/2020 and 9/16/2020).
[93] Id. at p. 386 (October 7, 2020 report from Dr. Boussert).

who treated Plaintiff prior to Dr. Boussert, likewise noted that Plaintiff's pain is "over-all well controlled" on medication.[94]

Plaintiff reported other limitations to daily living in his "Affidavit," including that he "requires assistance with getting dressed, showering, preparing meals, housework and reminders to take his medication."[95] But this statement is directly contradicted by Plaintiff's own statements during his IME wherein Plaintiff reported that he "can dress himself slowly, but prefers assistance. He can feed and bathe himself… He spends his days watching TV and the computer. He eats, walks, and sits."[96] Notably, Plaintiff admitted he could work 25 hours per week.[97] Plaintiff's "attestation" that he generally suffers from dizziness, nausea, impotence, anxiety, and depression[98] is not supported or documented in any substantial detail by the medical records of Plaintiff's treating physicians; likewise, there is no evidence showing how these complaints affect Plaintiff's work capacity. The record reflects that Plaintiff's complaints of anxiety, depression, insomnia, and fatigue are well-controlled by Plaintiff's medication regimen.[99]

As noted in *Chisholm*, "Plan administrators may not ignore consistent complaints of pain as subjective, but they are not required to give such complaints determinative weight.[100] Nor are plan administrators required to explain why they credited evidence that contradicts a claimant's reported limitations."[101] There is substantial evidence in the

---

[94] *Id.* at p. 494 (Office Note, Dr. Patel, 2/14/2018).
[95] *Id.* at p. 278.
[96] *Id.* at pp. 427, 434 (IME, 7/10/2020); Hartford also submitted video surveillance evidence showing that, during the relevant time period, Plaintiff used his left arm without strain to reach over and pull the driver's side door of his truck closed, after retrieving mail from his mailbox. *See* Rec. Doc. 15-6, AR, p. 1432.
[97] *Id.* at pp. 283-286 (Note and Physician's Recommended Restrictions, 3/4/21).
[98] *Id.* at p. 278.
[99] *Id.* at pp. 357 (Dr. Boussert's records, 9/16/2020); pp. 340-358 (Dr. Boussert's Office Visit Notes, e.g. 1/15/2020, 3/11/2020, 5/6/2020, 7/21/2020 and 9/16/2020); p. 494 (Office Note, Dr. Patel, 2/14/2018).
[100] *Chisholm*, 449 F.Supp.3d at 635 (citing *Corry*, 499 F.3d at 400–01).
[101] *Id.* (citing *Nord*, 538 U.S. at 834, 123 S.Ct. 1965).

record which demonstrates that Harford properly credited and considered reports of Plaintiff's pain and pain management protocol, as supported by his physicians. Hartford also properly explained why it did not credit Plaintiff's "Affidavit" and his subjective beliefs about his capacity, although ERISA does not require it to do so. Plaintiff's claim that Hartford ignored his subjective pain complaints is without merit.[102]

### F.    The Plan's Vocational Analysis

Plaintiff maintains the Plan's vocational analysis was flawed in many ways; thus, it could not serve to support Hartford's claim denial. Plaintiff contends the analysis fails because it cannot be rationally determined from the report whether the duties of the two identified jobs available to Plaintiff fall within Plaintiff's restrictions or would accommodate Plaintiff's narcotic pain regimen.[103]  Plaintiff claims that the Plan's denial is "completely dependent on the adequacy" of this vocational analysis.[104]  The record belies Plaintiff's contention.

Hartford defends the substance and reasoning of the vocational analysis[105] but counters that a vocational analysis is not required, and there remains substantial evidence in the administrative record to support its claim denial even without the vocational analysis.[106]  The Court agrees.

The Fifth Circuit has explicitly held that:

---

[102] For the same reasons, the Court finds Plaintiff's claim that Hartford "arbitrarily ignored third-party observations" without merit.  Rec. Doc. 28-3, p. 19.  Plaintiff refers to the unsworn "Statements" of Plaintiff's wife, mother, and father, which mimic verbatim Plaintiff's statements in his purported "Affidavit." *See* AR, pp. 279, 280, & 282. They are, therefore, lacking in credibility for the same reasons set forth in this section, and Hartford was not arbitrary or capricious in crediting the opinions and findings of Plaintiff's consulting and treating physicians over these family "observations."

[103] Rec. Doc. 28-3, p. 18.

[104] *Id.*

[105] Rec. Doc. 32, pp. 16-19.

[106] *Id.* at pp. 19-20.

ERISA does not require a Plan Administrator to seek consultation of a vocational expert. In *Duhon*, we stated that:

> [W]e will not hold that absent vocational rehabilitation evidence a plan administrator necessarily abuses his discretion in making a final determination of disability. Instead, we will allow the reviewing court to decide, on a case-by-case basis, whether under the particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational rehabilitation expert.[107]

Hartford relies on this Court's decision in *Beach v. Hartford Life & Accident Ins. Co.*,[108] wherein the Court, relying on Fifth Circuit authority, held:

> [A] plan administrator is not even required by ERISA to obtain the opinion of a vocational expert. The Fifth Circuit has concluded that: "we will not hold that absent vocational rehabilitation evidence a plan administrator necessarily abuses his discretion in making a final determination of disability." … Even if the Court excluded the Employability Analysis from consideration, the totality of the remaining evidence would still be sufficient to support Hartford's determination.[109]

As demonstrated above, the administrative record makes clear that Hartford evaluated and considered far more than the vocational analysis in denying Plaintiff's claim; thus, even if the Court excluded the vocational analysis from consideration, "the totality of the remaining evidence would still be sufficient to support Hartford's determination."[110]

### G.    May 26, 2022 SSA Determination

It his initial motion, Plaintiff made a passing reference to the first SSA determination that Plaintiff was not disabled and criticized Hartford for relying on this determination, stating only: "Occasionally climb ladders, ropes and scaffolds? How can it be rational for the Plan to credit these SSA findings when its own IME physician, Dr.

---

[107] *Holland v. International Paper Co. Retirement Plan*, 576 F.3d 240, 250 (quoting *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir.1994)).
[108] No. 13-362-SDD-SCR, 2014 WL 3724846 (M.D. La. July 28, 2014).
[109] *Id*. at *7.
[110] *See id*.

Bagley, who actually examined the man imposed far greater restrictions?"[111]  However, in Plaintiff's *Opposition* to Defendants' motion, Plaintiff requests that the Court allow Plaintiff to supplement the administrative record with the SSA's May 26, 2022 determination that he is permanently disabled.[112]

Plaintiff cites to Fifth Circuit jurisprudence holding that claimants may supplement an administrative record if they make a "showing that the evidence was unavailable to them while their administrative appeal was pending or that they made a good-faith effort to discover or submit the information during the administrative process."[113]  Plaintiff contends a plan administrator has a "duty" to address "a contrary Social Security determination."[114]

Plaintiff states: "The May 26, 2022 Social Security Administration ruling that Plaintiff is totally disabled was unavailable to him until long after the parties stipulated to the contents of the administrative record filed with this Court."[115]  Further, "[n]either the Plan nor Plaintiff had [an] opportunity to consider or argue the May 26, 2022 Social Security Administration ruling that Plaintiff is totally disabled during the underlying claim process."[116]

Hartford counters that the Court cannot consider the May 26, 2022 SSA determination because it was issued nearly one year after the date this lawsuit was filed,

---

[111] Rec. Doc. 28-3, p. 10.
[112] Rec. Doc. 30, pp. 1-3.
[113] *Id.* at pp. 1-2 (quoting *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 516 (5th Cir. 2010). *See also Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 3:20-CV-1277-S, 2022 WL 887271, at *2–4 (N.D. Tex. Feb. 14, 2022) (internal quotation marks omitted)).
[114] *Id.* at p. 2 (quoting *Arrington v. Unum Life Ins. Co. of Am.*, No. 1:14-CV-549, 2016 WL 7115970, at *11 (E.D. Tex. Sept. 13, 2016), *report and recommendation adopted*, No. 1:14-CV-00549, 2016 WL 7104040 (E.D. Tex. Dec. 6, 2016)).
[115] *Id.* at p. 3.
[116] *Id.*

June 11, 2021.  Thus, it is not properly before the Court.  Alternatively, Hartford contends that, even if the Court were to consider the later SSA determination, under applicable law, Hartford is not bound by it in reaching its decision.

First, the Court agrees that the May 26, 2022 SSA determination is not properly before the Court and should not be added to the administrative record.  Plaintiff's reliance on caselaw referring to information that was "unavailable" (while the ERISA appeal process was pending) is inapposite because, here, this information was not unavailable; it did not exist at all when Hartford made its claim determination.  While "[a] plan administrator's failure to consider a contrary SSA award in its benefits decision can be 'an important factor in its own right (because it suggest[s] procedural unreasonableness),'"[117] … "a contrary SSA disability award does not, in itself, prove that an administrator abused its discretion in rendering its benefits decision. Plaintiff must show that the SSA made its disability determination contrary to the administrator's findings *at the time* Defendant found Plaintiff to be ineligible for disability benefits."[118] Since *Vega*, the Fifth Circuit continually holds that "[t]he administrative record consists of relevant information made available to the [plan] administrator *prior to the complainant's filing of a lawsuit* and in a manner that gives the administrator a fair opportunity to consider it."[119]  Because the May 26, 2022 SSA determination was made nearly one year after this lawsuit was filed, it does not fall within any exception allowing its addition to the administrative record.

---

[117] *Chisholm*, 449 F.Supp.3d at 636 (quoting *Metro. Life Ins. Co.*, at 118, 128 S.Ct. 2343).
[118] *Id.* (citing *e.g., Marrs v. Prudential Ins. Co. of Amer.*, 444 F.App'x 75, 77 (5th Cir. 2011))(emphasis in original).
[119] *Dix v. Blue Cross and Blue Shield Ass'n Long Term Disability Program*, 613 Fed.Appx. 293, 296 (5th Cir. 2015) (quoting *Vega*, 188 F.3d at 300); *see also Hamburg v. Life Ins. Co. of North America*, 470 Fed. Appx. 382, 385 (5th Cir. 2012)(quoting Vega, 188 F.3d at 300)(noting that a claimant's lawyer can add additional evidence to the administrative record for consideration "*[b]efore filing suit.*")(emphasis added).

In any event, SSA findings are not binding on plan administrators. "While SSA disability findings are '"relevant and instructive" in a Court's determination of whether a plan administrator acted arbitrarily and capriciously,' it is well established that 'Social Security determinations are not binding upon a plan administrator.'"[120]  Indeed, disability determinations made by the SSA are subject to a different standard than those under ERISA.[121] As the court explained in *Matney v. Hartford Life Ins. Co.*,

> In the Fifth Circuit, furthermore, courts have refused to require that ERISA plan administrators adhere to a benefit determination by the Social Security Administration (SSA). *Milson v. St. Luke's Episcopal Hospital*, 71 F.Supp.2d 634, 639 n. 2. If courts made such findings, "'ERISA fiduciaries would be stripped of all administrative discretion, as they would be required to follow the Department of Health and Human Services' decisions regarding social Security benefits, even where the Plan determines benefits under different standards or the medical evidence presented is to the contrary.'" *Id.* (quoting *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir.1990)).[122]

The Court finds that Plaintiff has failed to demonstrate that the May 26, 2022 SSA determination should be added to the administrative record; the Court also finds that, even if considered, the final SSA determination is not binding on Hartford and does not undermine the substantial evidence in the administrative record supporting Hartford's benefits decision in this matter.

---

[120] *Dix v. La. Health Services & Indem. Co.*, No. 12-00319-BAJ-SCR, 2014 WL 4843670, at *13 (M.D. La Sept. 25, 2014) (quoting *Adams v. Metro. Life Ins. Co.*, 549 F.Supp.2d 775, 788 (M.D. La. 2007) (quoting *Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 376 F.Supp.2d 724, 735 (S.D. Tex. 2005)); *Horton v. Prudential Ins. Co. of Amer.*, 51 F. App'x 928, 2002 WL 31415104, at *3 (5th Cir. 2002) ("while an ERISA plan administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination."); *Williams v. Hartford Life Ins. Co.*, 243 F. App'x 795, 797 n.1 (5th Cir. 2007) (plan administrator was "not required to defer to a Social Security ruling.")).

[121] *See Hammond v. UNUM Life Ins. Co. of Am.*, Civ. A. No. 05–632, 2008 WL 906522, at *11 (S.D. Miss. Mar. 31, 2008) ("[E]ntitlement to Social Security benefits is measured by a uniform set of federal criteria, but a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria.... [T]he determination that a claimant suffers from a disability under Social Security regulations does not require an ERISA plan administrator to reach the same conclusion.").

[122] No. Civ. A.302CV2278LBH, 2004 WL 3187081, at *14 (N.D. Tex. Dec. 27, 2004), *aff'd*, 172 F. App'x 571 (5th Cir. Mar. 27, 2006).

### III.    CONCLUSION

For the foregoing reasons, Defendants' *Motion for Judgment on the Administrative Record*[123] is GRANTED, and Plaintiff's *Motion for Judgment on the Administrative Record*[124] is DENIED.  Judgment shall be entered in favor of Defendants.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 22nd day of March, 2023.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[123] Rec. Doc. 26.
[124] Rec. Doc. 27.